J-S44011-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHARD WILLIAM GNIEWKOWSKI | : | |
| | : | |
| Appellant | : | No. 1511 WDA 2018 |

Appeal from the Judgment of Sentence Entered May 23, 2018
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0001610-2017

BEFORE: SHOGAN, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.:                    FILED SEPTEMBER 10, 2019

Richard William Gniewkowski ("Appellant") appeals from the judgment of sentence entered after a jury convicted him of aggravated assault, simple assault, and recklessly endangering another person.[1] We affirm.

The trial court set forth the factual evidence of this matter in a memorandum opinion denying Appellant's post-sentence motions. Memorandum Opinion and Order, 9/21/18, at 5–9. In short, this case stems from an incident that occurred late at night on April 9, 2017, during which Appellant pointed a loaded rifle at two Pennsylvania State Troopers. The troopers were responding to Appellant's home based on a call from an alarm company and announced themselves to Appellant as state police. N.T.,

_____

[1] 18 Pa.C.S. §§ 2702(a)(6), 2701(a)(3), and 2705, respectively.

12/12/17, at 47–69, 106–119. Once in custody, Appellant claimed that he thought the troopers were intruders. Id. at 124, 209, 212. At trial, Appellant raised a defense of justification based on the Castle Doctrine,[2] and the trial court instructed the jury on justification. Id. at 314–318.

Following his conviction on December 13, 2017, the trial court sentenced Appellant on May 23, 2018, to incarceration for an aggregate term of twenty-one to forty-two months. Immediately after sentencing, defense counsel made an oral motion to continue Appellant's bond. With the Commonwealth's consent, the trial court promptly conducted a hearing on the motion; it then denied the request for bond pending appeal. N.T., 5/23/18, at 29; Order, 5/24/18.

Appellant filed a post-sentence motion and a motion for reinstatement of bond pending appeal on June 4, 2018,[3] and the Commonwealth filed a response on June 6, 2018. After modifying Appellant's sentence to reflect that the penalty for simple assault merged with the penalty for aggravated assault,

_____

[2] Formalized into statute by the Pennsylvania Legislature in 2011, "the castle doctrine is an evidentiary means by which a defendant may attempt to prove justification by self-defense." Commonwealth v. Cannavo, 199 A.3d 1282, 1287 (Pa. Super. 2018); 18 Pa.C.S. § 505(b)(2.1), (2.2).

[3] "[A] written post-sentence motion shall be filed no later than 10 days after imposition of sentence." Pa.R.Crim.P. 720(A)(1). Because the ten-day period for filing post-sentence motions fell on Saturday, June 2, 2018, Appellant had until Monday, June 4, 2018, to file his post-sentence motion. See 1 Pa.C.S. § 1908 (excluding weekend and holidays from the computation of time when the last day of the time period falls on a weekend or holiday).

the trial court denied Appellant's post-sentence motion. Memorandum Opinion and Order, 9/21/18, at 1, 3. This appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.[4]

On appeal, Appellant presents the following questions for our consideration:

1. Whether the trial court erred as a matter of law as to the weight of the evidence not dismissing the charges because no reasonable jury could have concluded that [Appellant] was guilty of the crimes charged given the Castle Doctrine applies and there was no evidence to the contrary?

2. Whether the trial court erred or abused its discretion in denying Appellant's motion for judgment of acquittal as the facts presented to the jury were not sufficient for a reasonable jury to find Appellant guilty beyond a reasonable doubt?

3. Whether the trial court abused its discretion in denying Appellant's motion for bond pending appeal?

4. Whether the trial court abused its discretion in sentencing Appellant to an aggregate sentence of twenty-one (21) to forty-two (42) months [of] incarceration where there was evidence of mitigation?

Appellant's Brief at 6.

We first address Appellant's second issue because a successful sufficiency-of-the-evidence claim requires discharge. Commonwealth v. Mikitiuk, ___ A.3d ___, ___, 2019 PA Super 195, *7 (Pa. Super. filed June

_____

[4] In its Pa.R.A.P. 1925(a) opinion to this Court, the trial court incorporated by reference its September 21, 2018 Memorandum Opinion and Order. Trial Court Opinion, 11/26/18, at 1.

20, 2019). As a preliminary matter, we must consider whether Appellant has preserved this issue for appellate review.

This Court has stated, "In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Pa.R.A.P.] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." Commonwealth v. Stiles, 143 A.3d 968, 982 (Pa. Super. 2016) (quoting Commonwealth v. Garland, 63 A.3d 339, 344 (Pa. Super. 2013)) (internal quotation marks omitted; emphasis added); see also Pa.R.A.P. 1925(b)(4)(ii) ("[T]he Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."). "Such specificity is of particular importance in cases where, as here, [A]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." Garland, 63 A.3d at 344. Failure to identify what specific elements the Commonwealth did not prove at trial in a Rule 1925(b) statement renders an appellant's sufficiency-of-the-evidence claim waived for appellate review. See Commonwealth v. Tyack, 128 A.3d 254, 261 (Pa. Super. 2015) (finding appellant's issues waived where "1925(b) statement simply declared, in boilerplate fashion, that the evidence was insufficient to support his conviction").

Here, Appellant generically states the following in his Pa.R.A.P. 1925(b) statement:

> 3. That the [c]ourt erred in denying [Appellant's] timely motion for judgment of acquittal as the facts presented to the jury were not a sufficient basis for a reasonable jury to find [Appellant] guilty beyond a reasonable doubt as [Appellant] was in his own home, had a reasonable belief that his life or family were in danger by a potential intruder, when he realized that the individuals outside were police (once they activated lights and sirens) he put the gun down and came outside of his home peaceably.

Pa.R.A.P. 1925(b) Statement, 11/26/18, at ¶ 3. Appellant does not specify any element of any of the convictions that the Commonwealth failed to prove beyond a reasonable doubt. Additionally, Appellant's "Statement of Questions Involved" fails to specify what element(s) of the convictions he is challenging on appeal. Appellant's Brief at 6.

However, in the argument section of his appellate brief, Appellant complains, "[T]he Commonwealth failed to prove beyond a reasonable doubt that Appellant was not justified in his self-defense." Appellant's Brief at 26. According to Appellant, he "was presumed to have a reasonable belief that deadly force was necessary; there was no testimony to rebut Appellant's contention that he was in fact fearful for his and his family's lives, and Appellant willingly abandoned his weapon and did not provoke the encounter." Id. at 27–28. To the extent that Appellant attempts to challenge the sufficiency of the evidence disproving his justification defense, we conclude that his claim does not merit relief.

In reaching this conclusion, we rely on—and adopt as our own—the well-reasoned analysis of the trial court in its response to Appellant's post-sentence motions. Memorandum Opinion and Order, 9/21/18, at 3–10. After stating the applicable law, explaining Appellant's argument, and reiterating the facts of record, the trial court disposed of Appellant's sufficiency challenge as follows:

> The evidence presented at trial, viewed in the light most favorable to the Commonwealth's case, was sufficient to prove beyond a reasonable doubt that [Appellant] attempted by physical menace to put a police officer, while in the performance of his duty, in fear of imminent serious bodily injury. Troopers Thompson and Gambone announced that they were law enforcement officers and [Appellant] responded with an expletive. [Appellant] pointed an AR-15 at Trooper Thompson and then at Trooper Gambone and kept it pointing at him as he retreated and remained behind a shed. [Appellant] aimed the weapon at Trooper Gambone for a period of approximately one minute. The weapon was later discovered to contain a chambered round and the selector switch was in the fire position. The evidence presented at trial was sufficient to support the jury's finding that the elements of aggravated assault, simple assault, and recklessly endangering another person had been proven by the Commonwealth beyond a reasonable doubt. Likewise, the evidence, viewed in the light most favorable to the Commonwealth's case, was sufficient to find that the Commonwealth met its burden of demonstrating that [Appellant's] actions were not justified.

Id. at 9. In sum, the Commonwealth proved beyond a reasonable doubt that Appellant did not act in self-defense. Appellant's contrary claim lacks merit.

Next, we address Appellant's challenge to the weight of the evidence. Appellant contends, "[N]o reasonable juror could have come to a determination of guilt because Appellant was wholly justified by the 'Castle

Doctrine' codified in 18 Pa.C.S. § 505." Appellant's Brief at 18. According to Appellant, his unrefuted testimony about his state of mind, his awareness of the scenario as it was unfolding, what he could not see from inside of his home, and his concern for his safety and his wife's safety established that "Appellant was justified in his action and it shocks one's conscience of justice to find Appellant guilty." Id. at 21.

In response, the Commonwealth submits multiple reasons why Appellant waived his weight claim. According to the Commonwealth: Appellant's post-sentence motion contains boilerplate language regarding weight; he did not include a weight claim in the brief supporting his post-sentence motion; he did not raise the weight claim at argument on his post-sentence motion; and the first time he provided any support for a weight claim was in his Rule 1925(b) statement. Commonwealth's Brief at 4–5.

We must determine whether Appellant has preserved his weight issue. Pennsylvania Rule of Criminal Procedure 607 governs challenges to the weight of the evidence and provides, in relevant part, as follows:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> > (1) Orally, on the record, at any time before sentencing;
> >
> > (2) By written motion at any time before sentencing; or
> >
> > (3) In a post-sentence motion.

Pa.R.Crim.P. 607(A). It has long been the law in Pennsylvania that a boilerplate post-sentence motion merely stating that the verdict was against

the weight of the evidence preserves no issue for appellate review unless the motion specifies in what way the verdict was against the weight of the evidence. Commonwealth v. Holmes, 461 A.2d 1268, 1270 (Pa. Super. 1983). "The purpose of [Rule 607] is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Comment to Pa.R.Crim.P. 607. "If an appellant never gives the trial court the opportunity to provide relief, then there is no discretionary act that this Court can review." Commonwealth v. Jones, 191 A.3d 830, 835 (Pa. Super. 2018) (footnote and citation omitted).

In his brief on appeal, Appellant purports to challenge the weight of the evidence establishing his defense of justification. In his post-sentence motion, however, Appellant presented only a boilerplate challenge to the weight of the evidence: "The verdicts at Counts 2, 4, 5 and 6 were against the weight of the evidence." Post–Sentence Motion/Motion for Reinstatement of Bond Pending Appeal, 6/4/18, at ¶ 10. Additionally, the record reflects that Appellant did not present a weight claim orally on the record or in writing at any time before sentencing or in his post-sentence motion brief. Brief in Support of Post-sentence Motion, 6/25/18. At the hearing on his post-sentence motion, Appellant argued a sufficiency-of-the-evidence issue, not a weight-of-the-evidence issue. See N.T., 7/30/18, at 3, 15; Memorandum Opinion and Order, 9/21/18, at 3. Based on the foregoing, we deem

Appellant's weight-of-the-evidence challenge waived on appeal.[5]  Jones, 191 A.3d at 835.

Appellant's third issue challenges the trial court's denial of bond pending appeal.  According to Appellant:

> [he] raised serious health issues for purposes of bond pending his appeal.  He believes that both his issues raised on appeal have merit, which have a likelihood of success to dismiss the charges and/or vacate his sentence and his medical conditions warranted release on bond pending his appeal. . . .
>
>     Additionally, Appellant should have been released on bond pending his appeal because he was on bond for the duration of his trial process and acted in accordance with all bail conditions. Furthermore, his family relationships and family health issues are very serious.  His is very nearly the sole income between [him] and his wife, and his imprisonment (while appealing issues with strong merit) was and continues to be a significant hardship on his family.

Appellant's Brief at 30–31 (citing N.T., 7/30/18, at 4, 17).

We have explained that, following a verdict of guilt, a defendant has no state or federal constitutional right to bail.  Commonwealth v. McDermott,

_____

[5]  Even if this claim were not waived, we would deny Appellant relief.  Sitting as the finder of fact, the jury was free to believe all, part, or none of the evidence against Appellant.  Commonwealth v. Tejada, 107 A.3d 788, 792–793 (Pa. Super. 2015). The jury weighed the evidence and concluded that Appellant participated in the crimes in question, thus discrediting Appellant's version of events and proffered justification for his actions.  We would agree with the trial court that this determination is not so contrary to the evidence as to shock one's sense of justice.  Memorandum Opinion and Order, 9/21/18, at 5.  We would decline to assume the role of fact-finder and to reweigh the evidence.  Accordingly, we would conclude the trial court did not abuse its discretion in refusing to grant relief on Appellant's challenge to the weight of the evidence.

547 A.2d 1236, 1242 (Pa. Super. 1988) (citations omitted). "After conviction and pending final disposition of all direct appeal proceedings, allowance of bail in non-capital cases is left to the discretion of the trial court." Id. (citing, inter alia, Commonwealth v. Myers, 21 A. 245, 247 (Pa. 1891)). Specifically, after sentencing, "when the sentence imposed includes imprisonment of [two] years or more, the defendant shall not have the same right to bail as before verdict, but bail may be allowed in the discretion of the judge." Pa.R.Crim.P. 521(B)(2).[6] Rule 521 does not give a defendant the right to bail. Rather, "[t]he provisions of [Rule 521] set forth the procedural rules adopted by our Supreme Court to govern the exercise of this discretion." McDermott, 547 A.2d at 1242 (citation omitted). This Court knows of no statutory or rule-based factors that govern such discretion, including consideration of Appellant's likelihood of success and medical condition, which are the bases of Appellant's claim. Accordingly, we ascertain no abuse of discretion in this instance.

Finally, Appellant challenges the low-end, standard-range sentence of twenty-one to forty-two months, where there was evidence of mitigation. Appellant's Brief at 33. Such a claim challenges the discretionary aspects of his sentence. See Commonwealth v. Cruz-Centeno, 668 A.2d 536, 545

_____

[6] Formerly Pa.R.Crim.P. 4009

(Pa. Super. 1995) (stating allegation that court ignored mitigating factors challenges discretionary aspects of sentencing).

We note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." Commonwealth v. Zirkle, 107 A.3d 127, 132 (Pa. Super. 2014). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. Commonwealth v. W.H.M., 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in Commonwealth v. Moury, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [708]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

Id. at 170 (citing Commonwealth v. Evans, 901 A.2d 528, 533 (Pa. Super. 2006)).

Herein, Appellant brought a timely appeal and included in his appellate brief the necessary separate concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Notice of Appeal, 10/22/18; Appellant's Brief at 3. However, as the Commonwealth and trial

court point out—and our review of the record confirms—Appellant did not raise a sentencing challenge in his post-sentence motion. Commonwealth's Brief at 21; Trial Court Opinion, 11/26/18, at 1; Post-Sentence Motion/Motion for Reinstatement of Bond Pending Appeal, 6/4/18. Thus, we deny Appellant's petition for allowance to appeal the discretionary aspects of his sentence.[7]

Judgment of sentence affirmed.

_____

[7] Even if we considered Appellant's sentencing challenge, we would deny relief for two reasons. First, Appellant failed to raise a substantial question. See Commonwealth v. Matroni, 923 A.2d 444, 455 (Pa. Super. 2007) ("This Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review."). Second, the trial court properly considered:

> 1) the facts of the case; 2) the pre-sentence investigation report; 3) the sentencing guidelines, including the deadly weapon used matrix; 4) [Appellant's] prior record score, which the [c]ourt considered to be a two; 5) statements made at the time of sentencing, including the statement of [Appellant's] wife; and 6) the statements of counsel.

Trial Court Opinion, 11/26/18, at unnumbered 2; N.T., 5/23/18, at 27–29; accord Moury, 992 A.2d at 171 (where sentencing court had benefit of presentence investigation report, we can assume sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors"). Accordingly, we would conclude that the trial court did not abuse its discretion in sentencing Appellant in the low-end of the guidelines' standard range.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/10/2019

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/10/2019</u>

IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA        CRIMINAL DIVISION

vs.                                 C.A. No. 1610 of 2017

RICHARD W. GNIEWKOWSKI

For the Commonwealth:   Benjamin A. Simon, Esq., Assistant District Attorney
For the Defendant:      Alexander H. Lindsay, Jr., Esq.
                        Benjamin B. Levine, Esq.

Judge William R. Shaffer                September 21, 2018

MEMORANDUM OPINION

Following a jury trial, the Defendant was convicted on December 12, 2017, of one count each of aggravated assault and simple assault, and two counts of recklessly endangering another person. On May 23, 2018, the Court sentenced the Defendant to undergo imprisonment in the custody of the Department of Corrections for a term of not less than twenty-one months and not more than forty-two months on the aggravated assault charge. The sentence for simple assault merged with the sentence for aggravated assault and the sentences for recklessly endangering another person were imposed concurrently with the term of incarceration for aggravated assault. In total, the Defendant was sentenced to undergo imprisonment of not less than twenty-one months and not more than forty-two months. While noting on the Sentence that the penalty for simple assault merged with the penalty for aggravated assault, the Court erroneously indicated that the sentence for simple assault included a term of incarceration of six to twelve months. That portion of the sentence will be vacated, but in all other respects the sentence will remain.

On June 4, 2018, the Defendant filed a Post Sentence Motion/Motion for Reinstatement of Bond Pending Appeal. Two claims were raised in the Defendant's post-sentence motion: 1) that the Court should consider additional information to that which was heard at the time of

App A

sentencing relating to whether a bond pending appeal is appropriate; and 2) that the verdicts at Counts 2, 4, 5, and 6 were against the weight of the evidence. The motion also indicated that the Defendant "will perfect a direct appeal based on the issues which arose at trial and sentencing" and counsel "will also address the same at a hearing on this filing insofar as it pertains to this request for release on bond pending appeal." On June 6, 2018, the Commonwealth filed a response in which it outlined its opposition to granting a bond pending appeal.

On June 25, 2018, counsel for the Defendant filed a Brief, styled "Defendant Richard Gniewkowski's Brief in Support of his Post Sentence Motion for Relief." In his brief, under the heading, "Statement of Questions Presented," the Defendant presented three issues:

1. Did the court err as a matter of law as it pertains to the sufficiency of the evidence in not dismissing the charges against Mr. Gniewkowski when based upon the evidence presented, no reasonable jury could have concluded that Mr. Gniewkowski was guilty of any of the charged crimes as Mr. Gniewkowski never exited his home with the firearm, never discharged the firearm, never threatened to discharge his firearm, and after the trooper had activated his overhead lights on his cruiser, Mr. Gniewkowski peaceably exited his home without the firearm once he realized the individuals outside were police officers?

2. Did the court err in not granting Mr. Gniewkowski's timely, specifically articulated request for a mistrial when during the Commonwealth's closing argument ADA Simon stated "I'm just going to put it out there right out of the gate Mr. Gniewkowski came up here and testified and lied to you to make things look as credible to his side of the story as possible?

3. Should, based on the evidence and testimony adduced at trial, review of the applicable case law, and review of the Brief in Support of his Post Sentence Motion, Mr. Gniewkowski be released on bond pending resolution of his Post Sentence request for relief and, if necessary, appeal to the Superior Court?

At the time of the hearing on the Defendant's post-sentence motion, counsel for the Defendant first argued that the Defendant's medical conditions warrant granting bail pending resolution of the motion and an appeal. Regarding the same, the Defendant testified to his loss of weight,

2

swelling, the feeling of pins and needles, and to seeing black spots. The Commonwealth argued that medical care within the Department of Corrections was adequate to address the Defendant's needs. The Court finds that bond pending disposition and appeal is not warranted based on the newly presented testimony in that medical treatment available in the Department of Corrections should be adequate to address the Defendant's needs.

Aside from arguments relating to bail, counsel for the Defendant presented arguments related to the sufficiency of the evidence presented at trial and prosecutorial misconduct relating to the closing argument of the attorney for the Commonwealth. The Defendant's argument relating to the sufficiency of the evidence is, essentially, that the Commonwealth failed to prove beyond a reasonable doubt that the Defendant was not justified in his actions. In other words, the Defendant claims the Commonwealth failed to demonstrate that he did not act in self-defense. The Court instructed the jury on justification in this matter. 12/12/2017 N.T., 314-18. In so doing, the jurors were instructed that the Commonwealth bore the burden of demonstrating "that the [D]efendant did not act in justifiable self-defense beyond a reasonable doubt." *Id.* at 314. As was noted above, the Defendant did not raise a discrete claim regarding the sufficiency of the evidence in his Post Sentence Motion. Rather, he claimed that the verdicts at counts 2, 4, 5, and 6 were against the weight of the evidence. We will consider each of the Defendant's claims even though they were not presented in the Post Sentence Motion/Motion for Reinstatement of Bond Pending Appeal.

The Supreme Court of Pennsylvania has addressed the standard of review for a sufficiency of the evidence challenge:

> When reviewing a challenge to the sufficiency of the evidence, we must determine if the Commonwealth established beyond a reasonable doubt each of

3

the elements of the offense, considering the entire trial record and all of the evidence received, and drawing all reasonable inferences from the evidence in favor of the Commonwealth as the verdict-winner. The Commonwealth may sustain its burden of proof by wholly circumstantial evidence.

*Commonwealth v. Segida*, 985 A.2d 871, 880 (Pa. 2009)(citations omitted). More recently, the Supreme Court has set forth the standard of review related to the sufficiency of the evidence as follows:

> The standard of review for evidentiary sufficiency is whether the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, supports the jury's finding that every element of the offense was proven beyond a reasonable doubt. The Commonwealth may sustain this burden by wholly circumstantial evidence and the jury is free to believe all, part, or none of the evidence.

*Commonwealth v. Hicks*, 156 A.3d 1114, 1123 (Pa. 2017), *cert. denied sub nom Hicks v. Pennsylvania*, 138 S. Ct. 176 (2017)(citations omitted). "The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." *Commonwealth v. Palmer*, _____ A.3d _____, 2018 Pa. Super. 185 (Pa. Super. Ct. 2018)(quoting *Commonwealth v. Williams*, 176 A.3d 298 (Pa. Super. Ct. 2017).

The Supreme Court of Pennsylvania has addressed weight of the evidence challenges as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 741 A.2d 666, 672-73 (Pa. 1999)(citations omitted). A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to

4

the discretion of the trial court. Appellate review of a weight of the evidence claim is directed to a review of the trial court's exercise of discretion, not the underlying question of whether a verdict was against the weight of the evidence. *Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017)(citing *Commonwealth v. Clay*, 64 A.3d 1049 (Pa. 2013)). The Pennsylvania Supreme Court in *Clay* noted the standard applicable to weight of the evidence claims:

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013).

Under 18 Pa.C.S.A. § 2702(a)(6), "[a] person is guilty of aggravated assault if he attempts by physical menace to put any [police officer], while in the performance of duty, in fear of imminent serious bodily injury[.]" Pursuant to 18 Pa.C.S.A. § 2701(a)(3), "a person is guilty of assault if he attempts by physical menace to put another in fear of imminent serious bodily injury." Section 2705 of the Crimes Code provides that a "person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." As fact-finder, the jury "was free to reject or accept all, part, or none of the testimony of any witness." *Commonwealth v. Gonzales*, 609 A.2d 1368, 1370 (Pa. Super. Ct. 1992)(citations omitted).

The jury may very well have rejected a substantial portion of the Defendant's favorable testimony. While such a decision may or may not have been taken by this Court, the jury's conceivable decision to discount or disregard the Defendant's version of the events at issue does not shock this Court's sense of justice. A new trial is not warranted. The evidence presented at

5

trial demonstrated the following concerning the actions at issue in this matter. On the night of April 9, 2017, into the morning of April 10, 2017, Trooper David Thompson and Trooper Robert Gambone responded to a call from an alarm company that came in shortly before the pair began their shift at 11:00 P.M. and traveled to 361 Star Grille Road in Butler County in a marked police vehicle. 12/12/2017 N.T., 48-49. The two troopers arrived at 361 Star Grille Road at 11:57 P.M. *Id.* at 50. The troopers were clothed in their State Police uniforms. *Id.* at 145. The troopers activated their flood lights and light bar to illuminate the house, but did not activate their red and blue overhead lights. *Id.* at 52-53. The troopers went to the front door of the house and observed that it was secure. They then went to the back door of the house. *Id.* at 53. Trooper Gambone approached the back door while Trooper Thompson remained located between that door and the police cruiser. *Id.* at 54, 110. Trooper Gambone utilized his flashlight to look inside of the residence. *Id.* at 143. Once at the back of the residence the troopers announced themselves and Trooper Gambone knocked on a man door that was located next to a sliding-glass door. *Id.* at 53-54.

Trooper Thompson testified that as he was looking through the sliding-glass door, he saw an individual, later identified as the Defendant, round the corner inside the house with an AR-15 "at the ready looking through the optic." *Id.* at 58. The individual pointed the weapon directly at Trooper Thompson through the sliding-glass window. *Id.* Trooper Thompson said "he's got a gun" and then said, "state police." *Id.* at 59. Trooper Gambone also announced, "state police" twice in a loud voice. *Id.* at 111. The Defendant responded by saying, "f*** you." *Id.* at 59, 111.

The troopers drew their weapons and continued to announce verbally that they were State Police troopers. *Id.* at 60. Trooper Thompson backed away around the corner of the residence

6

and the Defendant shifted his weapon to aim at Trooper Gambone. *Id.* at 60-61. Trooper Gambone retreated from the back porch of the residence in a zig-zag pattern and took cover behind a shed that was approximately sixty feet away. *Id.* at 61, 113. As Trooper Gambone was retreating, he continued to scream "State Police." *Id.* at 112. Trooper Thompson retreated to the patrol vehicle and contacted Trooper Gambone. Trooper Gambone indicated that he could not return to the patrol vehicle and that the Defendant was continuing to aim his weapon at him. *Id.* at 62. He also asked Trooper Thompson to "hit the lights." *Id.* at 146. When he poked his head out from behind the shed, Trooper Gambone could see that the Defendant continued to point the AR-15 at him. *Id.* at 115-16. Four times he saw the Defendant utilizing the sights of the weapon and aiming at him while he was behind the shed. *Id.* at 118. As this was taking place, the troopers continued to identify themselves as the State Police and directed the Defendant to lower his rifle. *Id.* at 62, 115. According to the testimony of Trooper Thompson, it took approximately one minute between when the Defendant first pointed his rifle at him to when he was able to reach the patrol vehicle. *Id.* at 65, 86-87. Once at the vehicle, the trooper activated the vehicle's siren and emergency red and blue lights. He also utilized the vehicle's public address system to announce State Police, and directed the Defendant to drop his weapon and come out with his hands up. *Id.* Shortly thereafter the Defendant exited the residence without his weapon, with his hands up, and was secured by the troopers. *Id.* at 66-67, 83. Trooper Gambone estimated that it took approximately one minute from when the Defendant was observed with the rifle to when the sirens and lights on the police vehicle were activated. *Id.* at 116.

Once secured, Trooper Thompson asked the Defendant why he had pointed his gun at the troopers when they had identified themselves as the State Police. Trooper Thompson recalled that the Defendant responded by stating, "anybody could say that." *Id.* at 69. Trooper Gambone

7

recalled the Defendant stated that anyone can identify themselves as the state police. *Id.* at 120.

Trooper Thompson testified that when he told the Defendant the troopers were responding to a burglar alarm, the Defendant responded by indicating that he was aware of having problems with the alarm in the past. *Id.* at 69-70. Once the AR-15 was recovered, it was determined that there was a live round in the chamber and the selector switch was in the fire position. *Id.* at 71.

Trooper Thompson testified that the Defendant appeared to be quite impaired. *Id.* at 98-99, 124.

The Defendant testified regarding his encounter with the police as follows:

> Well, I was just woken up by the alarm going off and I went out and checked the area. I didn't see anything. I shut the alarm off, and looked around. Didn't see anything again, shut it off. Reset it. Went back to bed....The alarm went off again, a few hours later. Dogs were barking. Alarm went off. Went out. Shut the alarm off, looked around, didn't see nothing. So I reset the alarm, I said no to myself so I didn't reset it. As I was walking back to my bedroom, I seen lights coming on my porch, flashlights coming on my porch and pounding at my door, back door. Flashing lights in my back door window in my eyes, saying, screaming Kittanning police, open your door, and they were trying my door knob, and they weren't like normally knocking. They were pounding my door and they were trying to get in my house, and I have a weapon in my hand, and I'm like I'm thinking to myself, oh, my God. Kittanning? What's Kittanning doing in Sarver? You know. Cabot. What's Kittanning doing in Cabot. And Kittanning police never came to my house, and I just kept saying I cannot see you. I can't see you. I kept repeating that. I can't see you and I can't see you and kept flashing their lights in my eyes, and all I kept seeing was green spots in front of me like somebody taking a, pictures with a camera, and I got frustrated and I said F you. I swore at them. And I still couldn't see them because I was blinded. I was like disoriented and I couldn't see. Walked to the side window. Still couldn't see them. And then I seen something out of the corner of my eye like flashing and I was like what's that. So I walked around. I had a big fish tank that I got from by cousin that passed away, and it was in the way and I couldn't look out that window there, I had to walk around with the weapon, I had to walk around, like trying to find my way around to get to the window to look out. Once I peeked out the window and seen the flashing lights I automatically put my weapon down, and I thought to myself, oh, it's the police. I put my weapon down, opened the door screamed I'm the homeowner at the top of my lungs, I'm the homeowner, I'm coming out with my hands up. I came out with my hands up in the air. They told me to turn around, get on your knees. I turned around. Got on my knees. Cop came running over jumped on me. Grabbed me by my left arm, put the cuff on as hard as he could, and he grabbed me by my right. I said watch I got a bad arm, and he said shut the F up you junky and clicked the handcuffs as hard as he could

8

on my arm and then after they did that they laid me on my face and they come and put shackles on my legs.

*Id.* at 209-11. At trial, the Defense displayed a video that depicted a flashlight shining through the doors of the Defendant's residence at night.

The evidence presented at trial, viewed in the light most favorable to the Commonwealth's case, was sufficient to prove beyond a reasonable doubt that the Defendant attempted by physical menace to put a police officer, while in the performance of his duty, in fear of imminent serious bodily injury. Troopers Thompson and Gambone announced that they were law enforcement officers and the Defendant responded with an expletive. The Defendant pointed an AR-15 at Trooper Thompson and then at Trooper Gambone and kept it pointing at him as he retreated and remained behind a shed. The Defendant aimed the weapon at Trooper Gambone for a period of approximately one minute. The weapon was later discovered to contain a chambered round and the selector switch was in the fire position. The evidence presented at trial was sufficient to support the jury's finding that the elements of aggravated assault, simple assault, and recklessly endangering another person had been proven by the Commonwealth beyond a reasonable doubt. Likewise, the evidence, viewed in the light most favorable to the Commonwealth's case, was sufficient to find that the Commonwealth met its burden of demonstrating that the Defendant's actions were not justified.

The Defendant asserts: "[t]hat a homeowner inside his residence who reasonably believes that would-be intruders are at his door and who arms himself to protect himself and his family can be charged, let alone convicted of, alleged crime for doing so, is a gross miscarriage of justice." Defendant Richard Gniewkowski's Brief in Support of his Post Sentence Motion for Relief, 5. Were those the established facts in this case, the Court would agree with the

9

Defendant's assertion. As the finder of fact, however, the jury was free to believe all, part, or none of the evidence presented at trial. It was the jury's duty to determine the credibility of the witnesses. Weighing that evidence was within the exclusive purview of the jury. While the Defendant's testimony, if believed, may have supported the notion that he was justified in responding the way he did on the morning of April 10, 2017, the jury was free to discount or dismiss the evidence favorable to the Defendant. For the jury to do so under the facts of this case does not shock this Court's sense of justice. According to the Defendant's testimony, he was aware that the individuals outside of his residence on the morning in question had identified themselves as police officers. According to the Defendant's testimony, he responded to them with an expletive. The testimony of both Trooper Thompson and Trooper Gambone was that the Defendant then aimed his weapon at the troopers and kept the weapon aimed at Trooper Gambone. The weapon remained aimed at Trooper Gambone for a substantial period of time. The weapon, an AR-15, was later found to contain a chambered round and the selector switch was in the fire position. This Court finds that the decision of the jury did not deny justice in this matter.

The Defendant, in his Brief in Support of his Post Sentence Motion for Relief, questions whether the Court erred in failing to grant a mistrial as a result of statements made by the prosecutor in his closing argument. While this issue was not presented in the Post Sentence Motion/Motion for Reinstatement of Bond Pending Appeal, the Court will address it here. The relevant portion of the prosecutor's closing argument is as follows:

> You're the detectives of this case. You put the pieces of the information together like a puzzle and to form the picture and in my opening statement I told you I was going to point out some obvious issues to you that don't add up to their defense, because quite frankly I'm just going to put it out there right out of the gate Mr. Gniewkowski came up here and testified and lied to you to make things look as credible to his side of the story as possible.

10

*Id.* at 285. Immediately thereafter, counsel for the Defendant moved for a mistrial.

The Court, over the objection of counsel for the Defendant, denied the motion for a mistrial but gave the following cautionary instruction to the jury:

> Members of the Jury, you will recall that in my opening instructions I gave you the instruction that it's your recollection of the evidence not mine or counsels' on which you must rely during your deliberation. I also said you are not bound by nor should you consider any opinion which you might think counsel or I have expressed concerning either the guilt or innocence of the defendant, the credibility of the witness, the weight of the evidence, the facts proven by the evidence or inferences to be drawn from the facts. Mr. Lindsay has objected to Mr. Simon's characterization of the defendant's testimony as lies. I would say that that's under the heading of what I just talked about. You are not bound by nor should you consider any opinion which you think counsel may have expressed concerning the credibility of witnesses. So, you're just to, I instruct you now to disregard Mr. Simon's characterization of the defendant's testimony as lies.

*Id.* at 288-89. First, it is important to note in evaluating this matter that there was no clear evidence presented that the Defendant, in fact, lied during his testimony. While the evidence may arguably support such an inference, the evidence at trial, viewed objectively, did not require such a determination. Based on our review of the trial testimony and evidence, we would describe the evidence supporting the inference that the Defendant lied to be quite weak. The Defendant's testimony, in the main, is not necessarily at odds with the testimony of Troopers Thompson and Gambone. Rather, the evidence quite easily supports the conclusion that the Troopers and the Defendant were, generally, describing the same events from different perspectives. Though it is certainly plausible the Defendant lied, the evidence presented at trial did not necessarily demonstrate that he did so. While similar statements to those made here may not be unfair when given in response to "comments of defense counsel in relation to the credibility of witnesses, and when they [are] supported by the evidence," *Commonwealth v.*

11

*Koehler*, 737 A.2d 225, 240-41 (Pa. 1999)(citing *Commonwealth v. Johnson*, 588 A.2d 1303, 1305 (Pa. 1991)), that is not necessarily the case here.

Even so, the "remedy of a mistrial is an extreme remedy required 'only when an incident is of such a nature that its unavoidable effect is to deprive the [Defendant] of a fair and impartial tribunal." *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. Ct. 2009)(quoting *Commonwealth v. Johnson*, 719 A.2d 778, 787 (Pa. Super. Ct. 1998)). In reviewing prosecutorial remarks to determine their "prejudicial quality, comments cannot be viewed in isolation but, rather must be considered in the context in which they were made" to determine whether the comments deprived the Defendant of a fair trial, but not a perfect one. *Judy*, 978 A.2d at 1019. When viewed in the context of the record as a whole, in light of the Court's instruction to disregard the prosecutor's comment in which he said the Defendant had lied, we do not conclude that the unavoidable effect of the comment was to deprive the Defendant of a fair trial. The remark of the prosecutor, in light of the Court's instructions to disregard it, was unlikely to have fixed in the minds of the jurors a bias against or hostility towards the Defendant. A mistrial was, in this Court's view, not required.

Accordingly, the Court enters the following:

12

**IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA     CRIMINAL DIVISION

vs.                       C.A. No. 1610 of 2017

**RICHARD W. GNIEWKOWSKI**

### ORDER OF COURT PURSUANT TO Pa.R.A.P. 1925(a)

AND NOW, this 26th day of November, 2018, the Clerk of Courts is directed to transmit the above record to the Superior Court of Pennsylvania in accordance with the Rules of Appellate Procedure on or about December 20, 2018.

In his "Concise Statement of Matters to be Complained of on Appeal," the Defendant claims: 1) the Court erred in rejecting his argument that the verdict was against the weight of the evidence; 2) the Court erred in denying the Defendant's request for a mistrial; 3) the Court erred in denying the Defendant's motion for judgment of acquittal because there was insufficient evidence to sustain guilty verdicts; 4) the Court abused its discretion in denying bond pending appeal; and 5) the Court abused its discretion in sentencing the Defendant to an aggregate sentence of twenty-one to forty-two months of incarceration.

The Court believes the first four of the Defendant's claims were adequately addressed in the Memorandum Opinion and Order of Court dated September 21, 2018. The September 21, 2018 Memorandum Opinion and Order of Court is hereby incorporated as if set forth fully herein.

The Court believes the fifth claim, that the Court abused its discretion in sentencing the Defendant to an aggregate sentence of twenty-one to forty-two months, is waived as it was raised in the Defendant's Statement for the first time. Even if the claim is not waived, the Court does not believe the sentence constituted an abuse of discretion. At the time of sentencing, the Court

noted that the following were considered in arriving at the standard range sentence: 1) the facts of the case; 2) the pre-sentence investigation report; 3) the sentencing guidelines, including the deadly weapon used matrix; 4) the Defendant's prior record score, which the Court considered to be a two; 5) statements made at the time of sentencing, including the statement of the Defendant's wife; and 6) the statements of counsel. When considering the above, the Court determined that a sentence at the bottom of the standard range was appropriate.

The Defendant may file a supplemental Concise Statement of Errors Complained of on Appeal, concerning errors reflected in the outstanding transcripts only, within seven day of the date on which those transcripts are filed, but no later than December 14, 2018.

By the Court,

William R. Shaffer, Judge